RECORD NO. 13-2449

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

FLEXIBLE FOAM PRODUCTS, INC.,

*Plaintiff - Appellant,*

v.

VITAFOAM INCORPORATED and
BRITISH VITA UNLIMITED,

*Defendants - Appellees,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
HON. MARTIN REIDINGER, DISTRICT JUDGE

---

## OPENING BRIEF OF PLAINTIFF-APPELLANT

---

BARNES & THORNBURG, LLP
Bradley R. Love
bradley.love@btlaw.com
Joseph Wendt
joseph.wendt@btlaw.com
11 South Meridian Street
Indianapolis, Indiana 46204
(317) 236-1313 Telephone
(317) 231-7433 Facsimile

CLONINGER BARBOUR
SEARSON & JONES, PLLC
Frederick S. Barbour
fred@lawyersasheville.com
21 Battery Park Avenue, Suite 201
Asheville, North Carolina 28801
(828) 254-0802 Telephone
(828) 232-9158 Facsimile

*Counsel for Plaintiff-Appellant*
*Flexible Foam Products, Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, counsel for Plaintiff-Appellant Flexible Foam Products, Inc. ("FFP") certifies that FFP is a privately held corporation and no publicly held corporation owns greater than 10% of its stock.  FFP is the wholly-owned subsidiary of Ohio Decorative Products, Inc., which is owned by Moeller Family Limited Partnership.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE ........................................................................i

TABLE OF AUTHORITIES ........................................................................v

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF THE ISSUES...................................................................2

STATEMENT OF THE CASE.......................................................................4

    A.    FFP ...............................................................................................4

    B.    Vitafoam .......................................................................................4

    C.    FFP's Purchase of the Chattanooga, Hight Point and Tupelo
        Businesses ....................................................................................4

    D.    The Parties' Litigation and Settlement of Antitrust Claims
        Against Chemical Suppliers .........................................................5

        1.    Negotiation and settlement with Bayer .....................5
        2.    The parties' joint complaint and ongoing litigation..................6
        3.    Negotiation and settlement with Huntsman and BASF ............7

    E.    Procedural History........................................................................7

        1.    Vitafoam's motion for summary judgment...............................8
        2.    The Order .................................................................................9

SUMMARY OF ARGUMENT ...................................................................11

STANDARD OF REVIEW .........................................................................13

ARGUMENT ..............................................................................................14

I.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY
    JUDGMENT ON GROUNDS NOT RAISED BY VITAFOAM
    WITHOUT PROVIDING FFP NOTICE AND AN OPPORTUNITY TO
    ADDRESS THOSE ISSUES ................................................................14

    A.    The District Court Did Not Interpret the Contract Provision Both
        Parties Argued Was Determinative .....................................16

B.    The District Court Focused on Irrelevant Sections of the Agreements Not Raised or Addressed by the Parties ........................16

C.    The District Court Disposed of FFP's Conversion Claims on Grounds Not Raised by Vitafoam and Inconsistent with FFP's Complaint ........................................................................................21

D.    FFP Suffered Prejudice from the District Court's Failure to Allow FFP to Address the New Grounds for Summary Judgment.....22

II.    THE DISTRICT COURT ERRED IN HOLDING THAT ANTITRUST CLAIMS ARE NOT SEVERABLE.............................................................23

III.    SUMMARY JUDGMENT SHOULD BE ENTERED THAT SECTION 2.1(H) ASSIGNED THE ANTITRUST CLAIMS TO FFP........26

IV.    THE DISTRICT COURT ERRED IN HOLDING THAT THE ASSERTION OF UNDEFINED CLAIMS THAT MIGHT INCLUDE THE ANTITRUST CLAIMS ASSIGNED TO FFP CONSTITUTED A BREACH OF THE AGREEMENTS STARTING THE STATUTE OF LIMITATIONS........................................................................................27

A.    Vitafoam Did Not Breach the Agreements By Participating in a Joint Representation Agreement with FFP .........................................28

B.    Vitafoam Did Not Breach the Agreements By Requesting Exclusion from a Proposed Class Settlement With Bayer.................30

C.    Vitafoam Never Clearly Asserted the Assigned Antitrust Claims Against BASF, Huntsman or Dow.......................................................31

D.    Vitafoam's Latter Assertion of High Point and Tupelo Claims Were and Will Continue to Be Breaches of the Agreements.............32

V.    VITAFOAM'S ASSERTION, LITIGATION AND SETTLEMENT OF CLAIMS DURING THE STATUTORY PERIOD AND IN THE FUTURE CONSTITUTE CONTINUING WRONGS .................................34

CONCLUSION ........................................................................................36

iii

STATEMENT FOR ORAL ARGUMENT ..............................................................37

CERTIFICATE OF COMPLIANCE.......................................................................38

CERTIFICATE OF SERVICE .................................................................................39

# TABLE OF AUTHORITIES

## CASES

*Centura Bank v. Winters*,
   159 N.C. App. 456, 583 S.E.2d 723 (Ct. App. 2003)....................................32

*Clark v. Henrietta Mills*,
   219 N.C. 1, 12, S.E.2d 682 (1941) ..................................................30

*Coward v. Jabe*,
   532 Fed.Appx. 328, 329 (4th Cir. 2013) .........................................14

*Glover v. First Union National Bank*,
   109 N.C. App. 451, 428 S.E.2d 206 (Ct. App. 1993)...............................29

*Hamilton v. Memorex Telex Corp.*,
   118 N.C. App. 1, 454 S.E.2d 278 *disc. review denied*, 340 N.C. 260,
   456 S.E.2d 830 (1995) .....................................................30

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)..................................................26, 32

*Island Creek Coal Co. v. Lake Shore, Inc.*,
   832 F.2d 274 (4th Cir. 1987) ............................................18

*Judwin Properties v. U.S. Fire Insurance Co.*,
   973 F.2d 432 (5th Cir. 1992) ............................................14

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)....................................................24

*Lefler Brothers v. C.W. Lane & Co.*,
   167 N.C. 267, 83 S.E. 463 (1914) .......................................18

*Marzec v. Nye*,
   203 N.C. App. 88, 690 S.E.2d 537 (Ct. App. 2010)...............................34

*Mast v. Sapp*,
   140 N.C. 533, 53 S.E. 350 (1906) .......................................35

*MedicalCap Corp. v. Betsy Johnson Health Care Systems, Inc.*,
    16 Fed.Appx. 180, 2001 WL 880097 (4th Cir. 2001) ............................28, 33

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) ...............................................................24, 25

*Novell, Inc. v. Microsoft Corp.*,
    429 Fed.Appx. 254, 260 (4th Cir. 2011) ........................................................25

*Oestreicher v. America National Stores, Inc.*,
    290 N.C. 118, 225 S.E.2d 797 (1976) ...........................................................28

*PBM Products, LLC v. Mead Johnson & Co.*,
    639 F.3d 111 (4th Cir. 2011) ................................................................. 13-14

*PCS Nitrogen Inc. v. Ashley II of Charleston LLC*,
    714 F.3d 161 (4th Cir. 2013) .........................................................................18

*RZS Holdings AVV v. PDVSA Petroleo S.A.*,
    506 F.3d 350 (4th Cir. 2007) .........................................................................26

*River's Edge Pharmaceuticals, LLC v. Gorbec Pharmaceutical Services, Inc.*,
    2012 WL. 1439133 (M.D.N.C. April 25, 2012)............................................29

*Tohato, Inc. v. Pinewild Management, Inc.*,
    128 N.C. App. 386, 496 S.E.2d 800 (Ct. App. 1998)........................ 17-18, 22

*U.S. v. Lynn*,
    592 F.3d 572 (4th Cir. 2010) ........................................................................16

*Wheeler v. Wheeler*,
    299 N.C. 633, 263 S.E.2d 763 (1980) ...........................................................33

*Yates v. Brown*,
    275 N.C. 634, 170 S.E.2d 477 (1969) ...........................................................20

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)......................................................................................24

## STATUTES

28 U.S.C. §1291 ..................................................................................... 1

28 U.S.C. § 1332(a)(1) ......................................................................... 1

15 U.S.C. § 15 ...................................................................................... 24

## RULES

Fed. R. App. P. 4(a)(1)(A) ..................................................................... 1

Fed. R. App. P. 26.1 ................................................................................. i

Fed. R. Civ. P. 26(b)(1) ........................................................................ 32

Fed. R. Civ. P. 56(f) ............................................................................. 14

## <u>JURISDICTIONAL STATEMENT</u>

This Court has general jurisdiction over the district court's October 30, 2013 summary judgment order (Joint Appendix ("JA") at 805-829) (the "Order") because it is an appealable, final order.  28 U.S.C. §1291.  The Order disposed of all remaining disputes between the parties.

The district court has subject matter jurisdiction because FFP and Vitafoam Incorporated are citizens of different states (Ohio and North Carolina); FFP and British Vita Unlimited are citizens of different countries (The United States and The United Kingdom); and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  FFP's appeal was timely since it was filed within 30 days of the final order at issue on December 2, 2013.  JA at 831-832; Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1.     Did the district court err in granting summary judgment on grounds not raised by the parties, which prevented FFP from presenting evidence and argument to, at a minimum, defeat summary judgment?

2.     Did the district court err in ignoring the contract provisions that FFP argued were dispositive?

3.     Did the district court err in holding that Vitafoam Incorporated could not assign antitrust claims related to two of its plants while retaining other antitrust claims related to separate Vitafoam Incorporated manufacturing facilities where such claims are independent, freely-assignable choses in action?

4.     Did the district court err in holding that FFP's conversion claim based on Vitafoam's assertion of ownership over settlement proceeds failed as a matter of law because such proceeds were intangible assets?

5.     Did the district court err in holding that FFP's claims were barred by North Carolina's three-year statute of limitations where Vitafoam asserted claims assigned to FFP only months before FFP filed suit?

6.     Did the district court err in holding that Defendants Vitafoam Incorporated's and British Vita Unlimited's (collectively "Vitafoam") asserting, litigating and settling claims during the statutory period and in the future were/are

not actionable breaches of contract or continuing wrongs, either of which would have made FFP's timely?

## STATEMENT OF THE CASE

**A.    FFP**

FFP has manufactured polyurethane foam in the United States for over 35 years.  It has expanded from a single plant to twelve both by building new facilities and by purchasing existing facilities from other companies.  JA at 499, ¶ 3.

**B.    Vitafoam**

Vitafoam Incorporated manufactured polyurethane foam in the United States at three plants prior to 2005.  In 2005, Vitafoam Incorporated decided to sell those plants, as well as its polyurethane foam fabrication facility in Chattanooga, TN, and exit the U.S. market.  JA at 261, ¶ 3-4.

**C.    FFP's Purchase of the Chattanooga, High Point and Tupelo Businesses**

As part of its decision to cease U.S. manufacturing, in December 2005 Vitafoam sold FFP its polyurethane foam manufacturing and fabrication businesses in High Point, NC and Tupelo, MS, through separate, largely identical contracts (the "Agreements").  Those Agreements are at issue in this appeal.  Section 2.1(h) of both Agreements assigned FFP "all of Seller's right, title and interest in and to … all claims of Seller against third parties related exclusively to the Business."  JA at 384-385, 424-425.  Earlier, in November 2005, FFP purchased a separate polyurethane foam fabrication facility from Vitafoam located in Chattanooga, TN.

In that agreement, Vitafoam, by contrast, did not assign FFP "any claims or rights against third parties (other than express or implied warranties …)."  JA at 458.

### D.    The Parties' Litigation and Settlement of Antitrust Claims Against Chemical Suppliers

In May 2006, FFP and Vitafoam received notification of a proposed class-action settlement of antitrust claims related to a conspiracy to fix the prices of the primary chemical inputs for the manufacture of polyurethane foam, and in June, both opted-out of the proposed settlement class.  JA at 499-500, ¶¶ 5-8; JA at 48, ¶ 2.  Both FFP and Vitafoam were approached by and retained the law firm of Dickstein Shapiro LLP ("Dickstein") to assert claims they might have for their purchases of the allegedly price-fixed chemicals from their prior suppliers.  JA at 500, ¶ 8; JA at 47-48, ¶ 1.  To avoid any possible conflict of interest in its joint representation of FFP, Vitafoam and other foam manufacturers, Dickstein instituted a firewall and asked outside experts to separately determine the damages claimed by each of the firm's foam-manufacturer clients.  JA at 48-50, ¶¶ 4-6, 9-10.  Those damages estimates were based primarily on sales records produced by the chemical suppliers and not on any claims or data provided by FFP or Vitafoam.  JA at 50, ¶ 9.

#### 1.    Negotiation and settlement with Bayer

As joint counsel for the group of foam manufacturers that included FFP and Vitafoam, Dickstein negotiated a global settlement with Bayer AG ("Bayer") in

5

July 2007 for any and all claims held by the foam manufacturers it represented.  JA at 48-49, ¶ 5.  Bayer and Dickstein did not negotiate settlements for any specific foam manufacturer's claims; instead, outside experts were asked post-settlement to estimate interim allocations for each Dickstein client based on Bayer's sales data, without being informed of FFP's or Vitafoam's specific claims.  JA at 48-50, ¶¶ 4-10.  The outside experts estimated and then allocated the damages to specific foam-manufacturing plants, including the High Point and Tupelo facilities.  JA at 49, ¶¶ 6-7.  Neither Bayer nor FFP was told that the outside experts estimated Vitafoam's share of the global settlement by including the chemical purchases of the High Point and Tupelo plants sold to FFP.  JA at 48-50, ¶¶ 4-10; JA at 500, ¶ 10.

### 2.    The parties' joint complaint and ongoing litigation

FFP, Vitafoam and other foam manufacturers jointly represented by Dickstein filed a joint complaint against BASF Corp. ("BASF"), the Dow Chemical Co. ("Dow"), Huntsman International LLC ("Huntsman") and Lyondell Chemical Co. ("Lyondell") in October 2008.  JA at 500, ¶ 8.  Dickstein continued litigating FFP's, Vitafoam's and other foam manufacturers' antitrust claims jointly through the filing of this appeal.  JA at 50-51, ¶ 12 (stipulating that Dickstein has taken no position regarding the ownership of the High Point and Tupelo claims and established an escrow account for settlement proceeds attributable thereto).

### 3.    Negotiation and settlement with Huntsman and BASF

After filing the joint complaint, Dickstein jointly represented FFP, Vitafoam and other foam manufacturers in negotiations and global settlements with Huntsman and BASF in late 2011 and early 2012.  JA at 50-51, ¶ 12.  As in the Bayer settlement agreement, the settlements with Huntsman and BASF did not address any specific foam manufacturer's claims, and outside experts were again asked to estimate damages and then allocate settlement proceeds for each Dickstein client that was a party to the settlements based on the chemical companies' sales data.  *Id.*  The outside experts estimated damages according to the sales from the antitrust defendants to each foam manufacturing plant, including the High Point and Tupelo plants, and Dickstein held in escrow the allocations attributed to the High Point and Tupelo facilities as a result of the parties' dispute.  *Id.*

### E.    Procedural History

After learning of Vitafoam's intention to assert antitrust claims related to the purchases and use of certain chemicals by the High Point and Tupelo Facilities against other chemical companies and to enter into settlement agreements on the basis of those claims, FFP filed its complaint against Vitafoam in this case on May 22, 2012.  FFP's complaint contended that Vitafoam's "assertion of ownership" of the third-party antitrust claims assigned to FFP in past, present and future litigation and settlements with chemical companies involved in illegal antitrust conspiracies

constituted breaches of the contracts between the parties. JA at 18-20, ¶¶ 44-46, 69-70. Additionally, FFP contended that Vitafoam's "assertion of ownership over the proceeds" from settlements of claims sold to FFP constituted conversion. *Id.* at ¶¶ 60-65.[1]

During discovery, in an effort to streamline the resolution of the parties' dispute before the district court, FFP and Vitafoam stipulated that FFP would be entitled to the total current allocation of settlement proceeds for High Point and Tupelo of $4,576,233 and the High Point and Tupelo share of future recoveries from claims against other chemical companies if FFP was determined to own the High Point and Tupelo antitrust claims and Vitafoam's affirmative defenses did not bar recovery. JA at 51-52, ¶¶ 13-14.

### 1.    Vitafoam's motion for summary judgment

On April 12, 2013, Vitafoam filed a motion for summary judgment seeking dismissal of all of FFP's claims and declaratory judgment regarding its right to assert antitrust claims related to the High Point and Tupelo facilities against third parties. JA at 70-102 (the "Motion"). Vitafoam presented three alternative arguments in support of its motion for summary judgment: (1) the antitrust claims were excluded from the sale under Section 2.2 (c) of the Agreements because they

---

[1] FFP also brought unjust enrichment claims but agreed that summary judgment on those claims was appropriate since both parties agreed the Agreements were valid, enforceable contracts between them. JA at 705.

were claims "arising under" contracts not assumed by FFP; (2) the antitrust claims did not "relate exclusively to" and were not "used or held for use" in the manufacturing businesses, and thus, were not sold to FFP under Section 2.1(h) of the Agreements; and (3) FFP's claims were barred by North Carolina's three-year statute of limitations for contract claims because any breach of the agreements occurred more than three years before FFP filed suit in May 2012. *Id.*

## 2.     The Order

On October 30, 2013, District Judge Martin Reidinger of the United States District Court for Western Division of North Carolina granted Vitafoam summary judgment on all claims brought by FFP related to the ownership of the High Point and Tupelo plants' antitrust claims.   In its Order, the district court rejected Vitafoam's first ground for summary judgment, holding that "an antitrust claim is not a tort claim" and that "torts and statutory violations … are not 'rights arising under' contracts" as advanced by Vitafoam.  Order at 12.  The district court never addressed Vitafoam's and FFP's arguments on whether the antitrust claims "related exclusively to" the High Point and Tupelo Businesses and were sold to FFP under Section 2.1(h) of the Agreements.

Instead, the district court's application of the Agreements to the antitrust claims was based on contract provisions related to "intangible rights and property" not raised by Vitafoam or addressed by FFP.  Order at 13-14.  The district court

ignored the relevant language in Section 2.1(h) addressing "all claims of Seller against third parties," which was the focus of both parties' briefs. JA at 385, 425. Because the district court found that the antitrust claims were "not used exclusively in the Business …[and] not material to the conduct of the Business" under Section 2.2(n), it held that the claims were excluded from the Agreements. *Id.* FFP and Vitafoam had not briefed the application of Section 2.2(n), and no oral argument was held on the parties' summary judgment motions.

As an alternative basis for summary judgment on the contract claims brought by FFP, the district court found that the contract claims were barred by North Carolina's three-year statute of limitations because "Vitafoam would have breached the Agreements the moment Vitafoam asserted any right to seek recovery from the Urethane cases defendants via a claim it no longer owned," pinpointing that moment as June 9, 2006, when Vitafoam filed a notice opting out of the proposed class-wide settlement with Bayer. Order at 20. The district court also rejected FFP's argument that Vitafoam's assertion of new antitrust claims against new entities and the subsequent assertion of claim ownership in settlement of those disputes constituted a "continuing wrong" restarting the statute of limitations because Vitafoam had no "continuing duty" to respect the assignment of claims made to FFP in the Agreements. Order at 22-23.

10

The Order granted summary judgment for Vitafoam on FFP's conversion claims on the grounds that (1) Vitafoam was the owner of the underlying antitrust claims based on the district court's prior interpretation of the Agreements, and that (2) FFP alleged the conversion of an "intangible interest," which is not subject to a claim of conversion under North Carolina law.  Order at 17-18.

FFP now appeals the district court's grant of summary judgment to Vitafoam on these grounds.

## SUMMARY OF ARGUMENT

The district court disregarded key facts and misapplied the relevant law in granting summary judgment to Vitafoam.  Fatally, the district court based its Order on new theories not raised by Vitafoam in its Motion and never addressed by FFP. In ignoring the parties' briefs, failing to provide notice of the new grounds for summary judgment to FFP, and declining to hear oral argument on the issues, the district court based its opinion on incorrect facts and proposed contract interpretations that are inconsistent with North Carolina and Federal law.  Under Rule 56(f), this flawed procedure alone requires reversal.

The district court's erroneous contract interpretations and unfounded factual findings further support overturning the Order.  Much of the Order is based on the incorrect conclusion that antitrust claims arising from purchases of chemicals from multiple suppliers over a period of more than five years are unitary and not

11

severable. Antitrust jurisprudence contradicts this conclusion, finding that each purchase at an inflated, anticompetitive price gives rise to a separate cause of action, and in fact, this Court has previously held that antitrust claims are severable and could be assigned from specific business units of a single company in an Asset Purchase Agreement. The district court also improperly applied internally inconsistent interpretations of the relevant Agreements that allow broad general provisions to take precedence over Vitafoam's specific assignment of "all claims of Seller against third-parties" to FFP. North Carolina law required the district court to give meaning to each provision of the Agreements and interpret the contracts so that specific provisions controlled over more general ones.

Indeed, based on the undisputed facts before the district court and the Supreme Court's interpretation of the Clayton Act, summary judgment should have been granted to FFP on the relevant contract interpretation issues. Clayton Act price-fixing claims against prior chemical suppliers are third-party claims arising from and exclusively related to the underlying chemical purchases, and it was undisputed that the High Point and Tupelo plants purchased the price-fixed chemicals for use exclusively in their businesses.

Because there was no support for the district court's conclusions that FFP had no right to the settlement proceeds allocated to the High Point and Tupelo plants, the Order's rejection of FFP's conversion claims should be set aside.

The district court's conclusion that FFP's contract claims were barred by the statute of limitations also was based on factual findings inconsistent with the record and the improper application of North Carolina law. Therefore, it must also be reversed. The district court erroneously found that Vitafoam's only possible breach of the Agreements' assignment of third-party claims occurred when Vitafoam submitted a request to be excluded from (opted-out of) a proposed class settlement with a single chemical supplier. Opting out of a settlement was not an assertion of the assigned claims as the district court found. Vitafoam breached the contracts and FFP's causes of action accrued when it asserted antitrust claims against other prior chemical suppliers, represented it owned the claims in settlements with those companies, and/or retained and refused to provide to FFP the recoveries allocated to the High Point and Tupelo plants' claims. At the very least, Vitafoam's assertion of claims and attempt to recover proceeds for the High Point and Tupelo plants constituted continuing wrongs, making FFP's claims timely. For these reasons, the Order should be reversed.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed "*de novo*, viewing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party." *PBM Prods., LLC v. Mead Johnson & Co.*,

639 F.3d 111, 119 (4th Cir. 2011). The appellate court can substitute its own

judgment as to whether the district court properly applied the applicable law. *Id.*

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON GROUNDS NOT RAISED BY VITAFOAM WITHOUT PROVIDING FFP NOTICE AND AN OPPORTUNITY TO ADDRESS THOSE ISSUES.**

In order to grant summary judgment for a new reason that had not been

addressed by the parties, the district court was required to provide notice to FFP

and give FFP an opportunity to present evidence necessary to withstand summary

judgment on that basis. Fed. R. Civ. P. 56(f) (summary judgment may only be

granted on grounds not raised by a party "[a]fter giving notice and a reasonable

time to respond"). Here, the court did not provide any notice or opportunity for

FFP to address its new theories supporting summary judgment. "Failure to give

the required notice is reversible error." *Coward v. Jabe*, 532 Fed.Appx. 328, 329

(4th Cir. 2013) (requiring remand where district court granted defendants' motion

for summary judgment on grounds not raised by defendants) (citing *Smith v.

Perkins Bd. of Educ.*, 708 F.3d 821, 831–32 (6th Cir. 2013); *Gentry v. Harborage

Cottages–Stuart, LLLP*, 654 F.3d 1247, 1261, 1263 (11th Cir. 2011)); *see also

Judwin Properties v. U.S. Fire Ins. Co.*, 973 F.2d 432, 437 (5th Cir. 1992)

(vacating and remanding summary judgment granted on grounds not raised by

defendant because plaintiff "is entitled to an opportunity to present its case to the district court prior to such a dismissal").

The district court's failure to abide by the summary judgment procedures of the Federal Rules caused it to ignore the relevant provisions of the contract and violate basic principles of contract interpretation under North Carolina law. Critically, the district court never determined whether the assignment of "all claims of Seller against third parties" in Section 2.1(h) transferred the antitrust claims associated with the purchase and use of certain chemicals by the High Point and Tupelo facilities to FFP. JA at 385, 425. The plain meaning of that provision must control under North Carolina law. Thus, the district court impermissibly failed to give effect to the more-specific assignment of third-party claims and potentially construed Section 2.1(h) to be meaningless.

The district court also misapprehended FFP's conversion claims when dismissing them on grounds not raised by Vitafoam. FFP contended that Vitafoam unlawfully "assert[ed] of ownership over the proceeds" from settlements of the High Point and Tupelo antitrust claims; however, the district court granted summary judgment on the basis that FFP claimed conversion of intangible assets. JA at 19. Had the district court given FFP the required notice and opportunity to respond, FFP might have prevented the district court from making these errors. The Order should therefore be reversed.

15

**A.    The District Court Did Not Interpret the Contract Provision Both Parties Argued Was Determinative.**

Vitafoam's Motion did not dispute that Vitafoam assigned FFP all "claim[s] of Seller against third parties related exclusively to the Business" under Section 2.1(h) of the Agreements and did not dispute that the High Point and Tupelo antitrust claims were "claims … against third parties."  Motion, JA at 85-86.  As the district court recognized, both parties submitted substantial evidence regarding the purchases of the price-fixed chemicals that gave rise to the disputed antitrust claims.  Order at 13, n.4.  The parties' briefs explained that this evidence and Section 2.1(h) of the Agreements were at the heart of their contract dispute; however, the district court ignored the evidence and never mentioned or interpreted Section 2.1(h).  The district erred in ignoring the key issue raised by both parties.  *See U.S. v. Lynn*, 592 F.3d 572, 582 (4th Cir. 2010) (vacating and remanding as an abuse of discretion a district court decision that failed to address critical issues raised by the parties because it produced "a record insufficient to permit even routine review").  The Order should be vacated and remanded for this reason alone.

**B.    The District Court Focused on Irrelevant Sections of the Agreements Not Raised or Addressed by the Parties.**

The district court's Order erroneously asserts that "FFP…argues that the … antitrust claim was an asset Vitafoam conveyed to it because § 2.1(*g*) of the Agreements specifically includes 'all of the intangible rights and properties of

16

Seller used exclusively in the Business.'" Order at 12-13 (emphasis added). This is simply incorrect. Neither FFP's summary judgment motion nor its opposition to Vitafoam's Motion addressed Section 2.1(*g*); FFP's evidence and arguments – like Vitafoam's – focused exclusively on Section 2.1(*h*) relating to claims against third-parties. JA at 330-331, 338-346, 683-684 and 688-692.

The district court's error in basing its contract interpretation on Section 2.1(g) rather than 2.1(h) was not harmless. First, the relevant provisions of Section 2.1(g)'s general transfer of intangible property are more restrictive than the language of Section 2.1(h)'s specific assignment of third-party claims. The district court's interpretation of one contract provision cannot be applied to the other. Section 2.1(g) restricts the sale of intangible property to that "***used*** exclusively ***in*** the Business" while Section 2.1(h) assigns all claims "against third parties ***related*** exclusively ***to*** the Business." JA at 384-385, 424-425 (emphasis added). Many assets – including the antitrust claims in this case – are related to the business, even if they are not used in the business. Despite the parties' many requests and arguments, the district court never determined whether the antitrust claims for chemicals purchased by the High Point and Tupelo plants "related exclusively to" those "Business[es]." *Id.* Under North Carolina law, the district court's interpretation of general language in Section 2.1(g) cannot supersede the more-specific assignment of third-party claims in Section 2.1(h). *E.g., Tohato, Inc. v.*

17

*Pinewild Management, Inc.*, 128 N.C.App. 386, 393, 496 S.E.2d 800, 804-805 (Ct. App. 1998) ("It is a well established rule of construction that the specific language of an instrument controls over its general terms.") (citation omitted); *see also PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 174 (4th Cir. 2013) ("Where a general provision … conflicts with a specific provision …, the specific provision controls.") (citation omitted).

Second, by ignoring the provision of the Agreements related to third-party claims and addressing such third-party claims under the more amorphous sale of other "intangible rights and properties," the district court's interpretation potentially rendered the contract internally inconsistent in its assignment of third-party claims, allowing a general provision regarding intangible rights to render meaningless Section 2.1(h)'s specific assignment of "all [third-party] claims."  JA at 384-385, 424-425.  This too violates basic North Carolina standards for contract interpretation.  *E.g., Lefler Bros. v. C.W. Lane & Co.*, 167 N.C. 267, 83 S.E. 463, 463 (1914) ("The court, in construing a contract, will examine the whole instrument, with reference to its separate parts, to ascertain the intention of the parties, and will not construe as meaningless any part or phrase thereof, when a meaning may thus be found by any reasonable construction.") (citation omitted); *see also Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 277 (4th Cir. 1987) (noting this is the "universal rule of contract law").

18

In addressing the provisions related to "Excluded Assets" in the Agreements, the district court similarly based its decision on a theory that was not advanced by Vitafoam and ignored the arguments raised by FFP. Vitafoam argued that the antitrust claims were not assigned to FFP "as 'any rights, *claims* or *causes of action* of Seller [Vitafoam] against third parties that … relate to the Excluded Assets' (Section 2.2(c))." Motion at 11 (JA at 84) (emphasis added). As before, Vitafoam contended that the High Point and Tupelo antitrust claims were "claims" under the language of the Agreements and did not seek summary judgment on the grounds that the antitrust claims were not "claims" but rather were "intangible rights and property." JA at 384-385, 424-425. Contrary to Vitafoam's grounds for summary judgment and the plain language of the Agreements, the district court found that the antitrust claims were not claims but rather were "intangible right[s] and property of Vitafoam." Order at 14. The district court was required to give FFP notice and the opportunity to address this new basis for summary judgment not raised by Vitafoam and did not.

Moreover, as FFP argued, the language of Section 2.2 confirms that "items specifically identified in Section 2.1" are unaffected by the list of potential exclusions in that section: the contract is structured such that the provisions of Section 2.1 prevail in the event of any ambiguity. JA at 385, 425. Thus, until the district court determines whether the antitrust claims were assigned under Section

2.1(h) of the agreements, the Order's interpretation of Section 2.2(n) is not dispositive.

Additionally, the parties' related contract concerning Vitafoam's sale of its Chattanooga, TN facility to FFP confirms that the list of exclusions in Section 2.2 of the Agreements was not intended to impact Vitafoam's assignment of "all claims of Seller against third parties" in Section 2.1(h). As FFP explained to the district court, in the Chattanooga agreement, FFP and Vitafoam specifically excluded "any claims or rights against third parties (other than express or implied warranties …)" by defining them as "Excluded Assets" rather than as part of the "Purchased Assets." JA at 458-460. The fact that there was no similar exclusion in the Agreements drafted at the same time – but instead, a specific assignment of third-party claims – contradicts the district court's interpretation. The parties' contemporaneous agreement related to the same subject matter should have been considered by the district court in interpreting the Agreements. *See Yates v. Brown*, 275 N.C. 634, 640, 170 S.E.2d 477, 482 (1969) ("All contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken."). The district court never addressed this issue, and its flawed contract interpretation should be overturned.

### C.    The District Court Disposed of FFP's Conversion Claims on Grounds Not Raised by Vitafoam and Inconsistent with FFP's Complaint.

The Order erroneously finds that FFP is claiming conversion of an intangible asset in this case and therefore grants Vitafoam summary judgment on FFP's conversion claims.  Order at 18-19.  However, Vitafoam never sought summary judgment that FFP was claiming conversion of intangible assets.  Motion (JA at 70-102).  Contrary to the district court's findings, FFP's conversion claims are based on Vitafoam "assertion of ownership over the proceeds" from settlements of the High Point and Tupelo antitrust claims and retention of same.  JA at 19.  The validity of FFP's claim that Vitafoam had asserted ownership over, accepted and retained settlement proceeds that were owned by FFP was never addressed.

Based on the erroneous contract interpretation addressed above, the district court also concluded that FFP's conversion claims failed since FFP had no right to the antitrust claims for chemicals purchased and used at the High Point and Tupelo facilities.  For the reasons described above, the district court's interpretation should be rejected, and accordingly, the ruling on FFP's conversion claim premised on that flawed interpretation should be overturned.  There was no basis in the Order to grant Vitafoam summary judgment on FFP's conversion claims.[2]

---

[2] Vitafoam did not seek summary judgment that FFP's conversion claims were barred by the statute of limitations.  Vitafoam asserted ownership over and retained settlement proceeds belonging to FFP within the relevant statutory period.

### D. FFP Suffered Prejudice from the District Court's Failure to Allow FFP to Address the New Grounds for Summary Judgment.

FFP was not given the opportunity to brief or argue the contract provisions the district court seized upon *sua sponte*. As discussed above, the parties correctly ignored provisions of the contract related to "intangible rights and properties" that were potentially inconsistent with the more specific provisions addressing "all claims of Seller against third parties" since their dispute concerned third-party antitrust claims for purchases at the High Point and Tupelo plants. JA at 384-385, 424-425; *Tohato*, 496 S.E.2d at 804-805. These issues could have been presented had FFP been provided the opportunity to address the district court's new grounds for summary judgment; however, the district court offered no notice that it was considering granting summary judgment on grounds not raised by Vitafoam and did not even hold a hearing on Vitafoam's Motion before disposing of the case.

Because of the district court's neglect of the protections provided by Rule 56, FFP was not given the opportunity to present evidence regarding the drafting of the language in the contract that could have aided the district court in correctly interpreting it. FFP had deposed Vitafoam's corporate designee regarding the negotiation and drafting of the Agreements, *see* JA at 356-378, and FFP also could have included evidence that the sections of the Agreements addressing "all claims … against third parties," and not the provisions dealing with intangible property,

were meant to address the assignment of third-party claims in the declaration of its officer involved in those negotiations.

FFP also was prevented from presenting evidence regarding the materiality of the antitrust claims to the Businesses purchased by FFP. Such evidence was not relevant to Vitafoam's Motion because it did not address any contract provision that included such language. The new provisions seized upon by the district court, however, did. FFP would have been able to show that there was at least a material factual dispute regarding whether the antitrust claims were material to the conduct of the Businesses or used therein.

## II.    THE DISTRICT COURT ERRED IN HOLDING THAT ANTITRUST CLAIMS ARE NOT SEVERABLE.

As discussed above, there is no indication in the Order that the district court's grant of summary judgment was based on any contract interpretation or provision suggested by Vitafoam or addressed by FFP. The only portion of the Order that might address the critical issue on which both FFP and Vitafoam sought summary judgment – whether the High Point and Tupelo antitrust claims "related exclusively to the Business[es]" under Section 2.1(h) – is the district court's unsupported assertion that "Vitafoam owned only one antitrust claim." Order at 13. This holding is both factually incorrect and legally unsupported, and it caused numerous errors in the district court's decision.

As a factual matter, the district court ignored evidence that the High Point and Tupelo plants purchased allegedly price-fixed chemicals from different companies over a period of more than five years resulting in multiple actionable injuries under the Clayton Act (15 U.S.C. § 15, which provides a private right of action for persons damaged by antitrust violations). *E.g.,* JA at 49-50, ¶¶ 6-9. In price-fixing cases, "each time a customer purchases product at the artificially inflated price, an antitrust violation occurs and a cause of action accrues." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971) ("the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted"). Just in the declarations submitted with FFP's motion for summary judgment (and cited in its opposition to Vitafoam's Motion), there was specific evidence of 20-30 separate purchases of allegedly price-fixed chemicals. JA at 569-675 (Key and Turberville Declarations).

Legally, the existence of multiple causes of action under the Clayton Act requires reversal of the district court's apparent conclusion that the High Point and Tupelo antitrust claims were not severable. Order at 13, 20-21 (finding Vitafoam's claim of damages against any supplier to be a claim of all damages, for all

24

purchases, against all suppliers). In direct contrast to the Order, this Court previously held that antitrust claims are severable and can be separated and assigned based on the divisions of a business to which they relate. *Novell, Inc. v. Microsoft Corp.*, 429 Fed.Appx. 254, 260 (4th Cir. 2011) (finding "severability" in antitrust claims so that those related to specific business unit could be assigned in an Asset Purchase Agreement). As this Court explained, the assignment of third-party antitrust claims for certain business units of a company "did not preclude [the company] from suing for *separate* harm to the *separate* interest in the [antitrust claims] it retained." *Id.* (emphasis original). This Court recognized that even the same defendant in an antitrust case could cause "discrete antitrust harms" to different units of a large business through the same general types of illegal conduct. *Id.* The Court's conclusion is consistent with – and indeed follows from – the Clayton Act creating a separate cause of action for each purchase at an artificially inflated price. *Morton's Mkt.*, 198 F.3d at 828.

Accordingly, the conclusions in the Order flowing from the district court's erroneous conclusion that antitrust claims are not severable should be overturned. This factual and legal error was the basis for the district court's conclusion that Vitafoam did not assign the High Point and Tupelo antitrust claims to FFP, and it is a separate reason to reverse that decision. As noted above, the error also was the basis (at least in part) for the district court's conclusion that FFP's contract claims

were barred by the applicable statute of limitations.  The error at least requires that the statute of limitations issue be remanded for consideration applying the correct legal standard.  *See RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356 (4th Cir. 2007) ("By definition, a district court abuses its discretion when it makes an error of law.").

## III.  SUMMARY JUDGMENT SHOULD BE ENTERED THAT SECTION 2.1(H) ASSIGNED THE ANTITRUST CLAIMS TO FFP.

The dispositive section of the Agreements not addressed in the Order – Section 2.1(h) assigning "all claims of Seller against third parties related exclusively to the Business" – requires not just that the Order be overturned, but that FFP should be granted summary judgment that it owns the High Point and Tupelo antitrust claims.  JA at 384-385, 424-425.

Since the seminal case of *Illinois Brick*, price-fixing antitrust claims can only be asserted by the "direct purchasers" of the price-fixed products.  *Illinois Brick Co. v. Illinois*, 431 US 720, 735 (1977).  The undisputed facts before, but not considered by, the district court showed that the High Point and Tupelo plants purchased the price-fixed chemicals giving rise to the disputed antitrust claims.  JA at 25, ¶ 19 (Answer admitting that High Point and Tupelo "ordered urethane chemicals off of the Vitafoam centralized and company-wide corporate purchase contracts for delivery to, use at, and invoicing to [those] facilit[ies]"); JA at 49-50, ¶¶ 6-10 (attributing "purchases of … the urethane chemical materials subject to

26

illegal price-fixing" to the High Point and Tupelo facilities); JA at 569-675 (undisputed declarations of former Vitafoam employees explaining how the High Point and Tupelo plants purchased the relevant chemicals). Thus, under the Supreme Court's interpretation of the Clayton Act, the antitrust claims for the price-fixed chemicals related exclusively to the High Point and Tupelo plants – the direct purchasers of those chemicals.[3]

IV. **THE DISTRICT COURT ERRED IN HOLDING THAT THE ASSERTION OF UNDEFINED CLAIMS THAT MIGHT INCLUDE THE ANTITRUST CLAIMS ASSIGNED TO FFP CONSTITUTED A BREACH OF THE AGREEMENTS STARTING THE STATUTE OF LIMITATIONS.**

As discussed in Section II above, the district court's conclusion that FFP's contract claims were barred by North Carolina's three-year statute of limitations was intertwined with its erroneous conclusion that "Vitafoam owned only one antitrust claim" and should be reversed for that reason. Order at 13, 20-21. Based on that error, the Order concludes that Vitafoam's assertion of any antitrust claim against any chemical supplier was the one and only time Vitafoam breached the Agreements. Order at 20. However, if Vitafoam assigned some antitrust claims against some suppliers to FFP (*i.e.*, those related to the High Point and Tupelo plants) while retaining others, further analysis and support was required for the Order's conclusion.

---

[3] There is no dispute that the Businesses suffered the relevant antitrust injury and incurred damages as required by the Clayton Act. JA at 49-50, ¶¶ 6-10.

### A. Vitafoam Did Not Breach the Agreements By Participating in a Joint Representation Agreement with FFP.

As the record shows, there was no contract between FFP and Vitafoam precluding Vitafoam from bringing antitrust claims against certain parties or dictating the amount it could accept in settlements with those parties. In fact, FFP and Vitafoam were jointly represented in every negotiation, settlement and assertion of antitrust claims against their chemical suppliers. JA at 48-51, ¶¶ 4-12; JA at 500, ¶¶ 8-10. Vitafoam's only potential assertion of price-fixing claims against its former chemical suppliers was through joint counsel and assumed to be consistent with FFP's simultaneous claim assertions against the same companies – Vitafoam never asserted any antitrust claims against the suppliers in exclusion from FFP. *Id.* Vitafoam's undisclosed intent or mistaken belief that it was asserting antitrust claims assigned to FFP was not a breach of the Agreements triggering the statute of limitations. *C.f. Oestreicher v. Am. Nat'l Stores, Inc.*, 290 N.C. 118, 138, 225 S.E.2d 797, 810 (1976) (anticipatory breach requires "a repudiation of [a party's] contractual duty before the time fixed in the contract for his performance has arrived ... made either by word or by act" not simply a party's undisclosed intent); *MedCap Corp. v. Betsy Johnson Health Care Systems, Inc.*, 16 Fed.Appx. 180, 184, 2001 WL 880097, *3 (4th Cir. 2001) (reversing summary judgment on contract claims under statute of limitations where there was not

28

"definitive, total repudiation of the contract" and the party still could have performed its obligations under the agreement).[4]

Critically, it its joint representation of both FFP and Vitafoam regarding the disputed antitrust claims, Dickstein never advocated that one party or the other owned the claims and was asserting them against the chemical suppliers. As joint counsel Dickstein attempted to obtain the largest recovery for all its foam-manufacturer clients and left it to an independent expert to determine the division of any proceeds, holding the disputed portions in escrow. JA at 48-51, ¶¶ 4-12. FFP did not argue below that its lack of knowledge of Vitafoam's intent to breach the Agreements tolled the statute of limitations as the Order suggests. Order at 20. Rather, FFP argued that Vitafoam's undisclosed intent was not an anticipatory breach, and FFP had not yet been precluded from demanding any benefits from Section 2.1(h) of the Agreements. *See Glover v. First Union Nat'l Bank*, 109 N.C. App. 451, 428 S.E.2d 206, 208 (Ct. App. 1993) (plaintiff must be "entitled to demand" benefits before contract can be breached). This issue was not addressed by the district court.

---

[4] *See also River's Edge Pharmaceuticals, LLC v. Gorbec Pharmaceutical Services, Inc.*, No. 1:10CV991, 2012 WL 1439133, *5 (M.D.N.C. April 25, 2012) ("statements [claiming ownership over intangible property] alone, even though contrary to Plaintiff's alleged interest, [did not] constitute a breach of contract").

**B.    Vitafoam Did Not Breach the Agreements By Requesting Exclusion from a Proposed Class Settlement with Bayer.**

The district court incorrectly concluded as a matter of law that FFP had suffered harm and was entitled to seek damages at the time Vitafoam filed a Request for Exclusion with the class administrator with respect to the proposed class settlement with Bayer on June 9, 2006.  Order at 20.  In fact, the record before the district court and the relevant law require the opposite conclusion.

First, requesting exclusion from a proposed class settlement is not asserting an antitrust claim as the district court suggests.   As the parties' stipulated, Vitafoam was merely opting out of the settlement and the proposed class-wide resolution of potential claims against Bayer.  JA at 48, ¶ 2.  For reasons discussed below, even opting *in* to the settlement likely was not a breach of the Agreements, but opting *out* clearly was not – it is the *opposite* of asserting antitrust claims.

Second, even if Vitafoam somehow later asserted antitrust claims against Bayer, asserting the claims would not cause FFP any harm and give rise to a breach of contract claim.  *See Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 9, 454 S.E.2d 278, 282, *disc. review denied*, 340 N.C. 260, 456 S.E.2d 830, 831 (1995) (statute of limitations had not run on contract claims because "the plaintiffs suffered no injury until the defendant failed to pay them"); *Clark v. Henrietta Mills*, 219 N.C. 1, 12, S.E.2d 682, 685 (1941) (cause of action for breach of contract did not arise until defendant withheld funds due to plaintiff under the

30

contract). A general claim of antitrust injury against Bayer would not be a clear assertion by Vitafoam of claims for purchases made by the High Point and Tupelo facilities simply because Vitafoam had other facilities that also purchased chemicals from Bayer. JA at 261, ¶ 3-4. Also, FFP could actually benefit from such an assertion if Vitafoam complied with the Agreements and turned over to FFP any recoveries related to purchases by the High Point and Tupelo facilities. FFP would only be harmed if Vitafoam received and improperly retained the recoveries for High Point and Tupelo after a demand was made by FFP. FFP could not have asserted a contract claim until that time.

### C. Vitafoam Never Clearly Asserted the Assigned Antitrust Claims Against BASF, Huntsman or Dow.

Vitafoam did not present any evidence before the district court that it breached the Agreements with respect the High Point and Tupelo antitrust claims against BASF, Huntsman or Dow. There was no factual support for the district court's conclusion that Vitafoam breached the Agreements with respect to those claims. Dickstein distributed to Vitafoam an interim division of the global settlement with *Bayer* that included estimates of damages for the High Point and Tupelo chemical purchases. JA at 49, ¶¶ 6-7. However, when the estimates of the damages for High Point and Tupelo were calculated for the global *BASF* and *Huntsman* settlements in May 2012, those proceeds were put in escrow. JA at 50-

51, ¶ 12.  There was no settlement with Dow, and Dickstein jointly represents FFP and Vitafoam in that ongoing litigation.  JA at 52, ¶ 14.

Given the unique situation of the parties, Vitafoam pointed to its separate opt-out notice from the proposed class settlement with Bayer and its discovery responses in the litigation with BASF and Dow as potential assertions of the assigned claims.  The district court erred in finding that a notice opting out of a proposed class-wide settlement with an entirely different entity was an assertion of assigned third-party claims against BASF, Huntsman or Dow.  Order at 20.  The production of documents related to chemical purchases at High Point and Tupelo that Vitafoam highlighted cannot save the Order.   In the consolidated cases, Vitafoam was asked by Defendants to produce documents "relevant to any party's claim or defense," and its compliance was not an assertion of assigned third-party claims against BASF, Huntsman or Dow.  Fed. R. Civ. P. 26(b)(1).

### D.    Vitafoam's Later Assertion of High Point and Tupelo Claims Were and Will Continue to Be Breaches of the Agreements.

As a direct purchasers, the High Point and Tupelo plants had separate causes of action against each supplier of price-fixed chemicals.  *See Illinois Brick*, 431 US at 735.  If Vitafoam assigned certain of those claims to FFP, Vitafoam's later assertion of a claim for damages against each supplier is a separate breach of the assignment.  The contract was not void after a single breach.  *See, e.g., Centura Bank v. Winters*, 159 N.C.App. 456, 460, 583 S.E.2d 723, 725 (Ct. App. 2003)

(holding multiple breaches of same agreement gave rise to separate claims in granting summary judgment to plaintiff).    In fact, FFP could later obtain knowledge of a non-material breach of the Agreements and still choose to "accept the partial performance of the breaching party."  *Wheeler v. Wheeler*, 299 N.C. 633, 639, 263 S.E.2d 763, 767 (1980).  This would be the logical course where an earlier breach occurred beyond the statute of limitations under North Carolina law.

This comports with common sense.  A party to a valid contract cannot escape liability for a breach of its duty under the contract because it had committed a separate smaller and unnoticed breach years earlier.  Each breach of a contract gives rise to a new cause of action.  As this Court explained in *MedCap*:

> Consider this situation: The [defendant] Hospital in its five-year contract violates the exclusivity requirement during the first month, but complies each month thereafter for four years. Then four years after this one breach, the Hospital chooses to breach the contract each and every month for the remainder of the contract term. The position of the Hospital would be that the statute of limitations began running at the first month's breach and thereby precluded any action by [plaintiff] for the violations occurring during the last year of the contract. Such a position is obviously not reasonable …

*MedCap*, 16 Fed.Appx. at 183 (stating that "commonsense accrual rule" is consistent with North Carolina common law for lease contracts).  The Order's conclusions to the contrary should be set aside.

33

## V.     VITAFOAM'S ASSERTION, LITIGATION AND SETTLEMENT OF CLAIMS DURING THE STATUTORY PERIOD AND IN THE FUTURE CONSTITUTE CONTINUING WRONGS.

North Carolina also recognizes an exception to its three-year statute of limitations in contract cases: the statute is tolled for continuing wrongs.  Under North Carolina law, "the statute of limitations does not start running until the violative act ceases." *Marzec v. Nye*, 203 N.C. App. 88, 94, 690 S.E.2d 537, 542 (Ct. App. 2010) (finding that claim "accrued each time [the defendant] failed to pay").  The district court's order misapplied the continuing wrong doctrine in concluding that Vitafoam's only act in violation of the Agreements was filing "with the Bayer Administrator its demand for antitrust damages" on June 9, 2006.  Order at 23.

As discussed above, it is simply incorrect that Vitafoam *ever* filed a "demand for antitrust damages" with the Bayer Administrator.  Order at 23.  As set forth in the parties' Joint Stipulation in the case, Vitafoam's June 2006 notice was simply a request of "opt-out or exclusion from the Bayer settlement in the then pending antitrust class action suit."  JA at 48, ¶ 2.  The copy of Vitafoam's June 2006 "Request for Exclusion" attached to the parties' Joint Stipulation confirms this fact; Vitafoam only "request[ed] exclusion from the Settlement Class" and made no claim or demand for antitrust damages.  JA at 55-56.

Moreover, none of disputed settlement proceeds in this case were "benefits flowing from the fruit" of Vitafoam's June 2006 opt-out notice as the Order suggests.  Order at 24.  Dickstein reached a global settlement with Bayer over a year later making no assertion to Bayer regarding which of its foam-manufacturer clients were owed damages for the chemical purchases at any facility, and nothing about the settlement flowed from the class settlement opt-out notice.  JA at 48-49, ¶¶ 5-7.  Vitafoam and FFP retained Dickstein, asserted claims against Bayer, and only then negotiated and consented to a settlement for whatever claims they might have.  And Vitafoam's June 2006 notice has absolutely no connection to any antitrust claims against BASF, Huntsman or Dow assigned to FFP.  There was no evidence of any filing by Vitafoam that asserted antitrust claims against BASF, Huntsman or Dow related to the High Point and Tupelo facilities.

Even if the June 2006 opt-out notice somehow breached the Agreements with respect to Bayer, Vitafoam's subsequent breaches in asserting third-party claims assigned to FFP against BASF, Huntsman and Dow constituted continuing wrongs.  Vitafoam did not merely commit "one single act of wrong" as the district court found.  Order at 22 (quoting *Mast v. Sapp*, 140 N.C. 533, 540-541, 53 S.E. 350, 352 (1906)).  It has negotiated and entered into settlements with multiple third parties and is likely to assert and litigate claims against Dow in the near future.  Vitafoam breached and will breach the Agreements every time it enters into a

settlement for or asserts claims related to the High Point and Tupelo facilities against a third party. Such violations are actionable.

## CONCLUSION

For the reasons stated above, the district court's Order granting summary judgment for Vitafoam should be reversed and the case remanded. FFP also requests that the Court enter summary judgment for FFP that Section 2.1(h) of the Agreements assigned FFP all of Vitafoam's antitrust claims attributable to chemical purchases by the High Point and Tupelo facilities.

Dated: January 21, 2014              Respectfully submitted,


                                By: /s/ Bradley R. Love

                                    Bradley R. Love
                                    Joseph Wendt
                                    BARNES & THORNBURG LLP
                                    Attorneys for Plaintiff Flexible Foam Products, Inc.

36

## <u>REQUEST FOR ORAL ARGUMENT</u>

FFP respectfully requests that the Court hear oral argument in this case.

Dated: January 21, 2014

                          Respectfully submitted,

                          By: /s/ <u>Bradley R. Love</u>

                                Bradley R. Love
                                Joseph Wendt
                                BARNES & THORNBURG LLP
                                Attorneys for Plaintiff Flexible Foam Products, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 8,011 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point font.

Dated: January 21, 2014          Respectfully submitted,


By: <u>/s/ Bradley R. Love</u>

      Bradley R. Love
      Joseph Wendt
      BARNES & THORNBURG LLP
      Attorneys for Plaintiff Flexible Foam Products, Inc.

38

## PROOF OF SERVICE

I hereby certify that on January 21, 2014, I will cause to be filed with the Clerk, United States Court of Appeals for the Fourth Circuit, the required copies of the **OPENING BRIEF OF PLAINTIFF-APPELLANT FLEXIBLE FOAM PRODUCTS, INC. and JOINT APPENDIX, VOLUMES I & II** via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to:

A. Ward McKeithen
Lawrence C. Moore, III
ROBINSON, BRADSHAW & HINSON, PC
101 North Tryon Street, Suite 1900
Charlotte, NC  28246


Executed on January 21, 2014, at Indianapolis, Indiana.



/s/ Bradley R. Love

Bradley R. Love